UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JENNIFER POWELL,
    Plaintiff,

v().                                              Case No.: 3:23cv8982/TKW/ZCB

MARTIN O'MALLEY,
Commissioner of Social Security,
    Defendant.[1]
_____/

## REPORT AND RECOMMENDATION

This is a Social Security appeal filed under 42 U.S.C. § 405(g). Plaintiff Jennifer Powell seeks judicial review of the Social Security Commissioner's decision denying disability benefits. Because substantial evidence supports the Commissioner's decision, it should be affirmed.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. *See* "Commissioner," Social Security, https://www.ssa.gov/agency/commissioner/ (last visited February 9, 2024). Under Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted as the Defendant.

## I.   Procedural History

Plaintiff applied for supplemental security income because of disability, alleging an onset date of September 23, 2020. (Tr. 10, 144-50).[2] The Social Security Administration denied her application. (Tr. 57-75). Plaintiff requested a hearing before an Administrative Law Judge (ALJ). That hearing was held on January 5, 2023. (Tr. 88, 32-56). The ALJ subsequently found Plaintiff was not disabled. (Tr. 10-19). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). The ALJ's decision stands as the Commissioner's final decision, and Plaintiff has timely requested judicial review under 42 U.S.C. § 405(g).

## II.   The Social Security Administration's Sequential Evaluation Process

The Social Security Administration uses a five-step sequential process to determine whether a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4). First, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If

---

[2] Citations to the administrative record filed by the Commissioner are designed as "Tr." The page numbers cited are those found on the bottom right corner of each page of the transcript, rather than the numbers that were assigned by the Court's electronic docketing system.

so, then the claimant is not disabled. *Id.* § 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner will determine the severity of the claimant's impairments. *Id.* § 416.920(a)(4)(ii). To be disabled, a claimant must have a "severe impairment," which is an impairment that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* § 416.920(c).

Third, the Commissioner evaluates whether the claimant's severe impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations (the "Listings"). *Id.* § 416.920(a)(4)(iii). Fourth, the Commissioner determines whether the claimant's residual functional capacity permits performance of his or her past relevant work. *Id.* § 416.920(a)(4)(iv). Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work in the national economy. *Id.* § 416.920(a)(4)(v).

The claimant bears the burden of proof at the first four steps. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). If the

3

claimant establishes the first four steps, then the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy that the claimant could perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, then the claimant must prove that she cannot perform the work identified by the Commissioner. *Goode*, 966 F.3d at 1279.

### III. The ALJ's Decision

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 12, Finding 1). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: human immunodeficiency virus (HIV) and anxiety. (Tr. 12, Finding 2).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13, Finding 3). Proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work, except:

> the claimant can understand, remember, and carry out simple and detailed but not complex instructions. She can use judgment to make simple work-related decisions. She can have frequent interaction with coworkers and supervisors but no interaction with the public as part of the job. She is able to adjust to frequent changes in a routine work environment.

(Tr. 14, Finding 4). At step five, the ALJ concluded there were jobs in significant numbers in the national economy that Plaintiff could perform. (Tr. 18, Finding 9). Based on these findings, the ALJ concluded that Plaintiff was not disabled. (Tr. 19, Finding 10).

## IV. Standard of Review

This Court reviews the Commissioner's decision to determine whether it is supported by substantial evidence and whether the correct legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). It is not this Court's role to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (cleaned up). Indeed, the Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (cleaned up).

The substantial evidence standard is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). It requires "more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations omitted). Put another way, it requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (internal quotation omitted). And "[i]f the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotations omitted).

## V.  Discussion

To be entitled to Supplemental Security Income, a claimant must be disabled, meaning the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

Under this framework, "the claimant bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence to support [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Diagnoses alone do not establish work-related limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

An ALJ bears final responsibility for assessing a claimant's residual functional capacity and resulting limitations, based on all the relevant medical and other evidence in the record. *See* 20 C.F.R. §§ 416.945(a)(3), 416.946(c); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). While a residual functional capacity determination must be based on the relevant evidence, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

As part of the residual functional capacity analysis in this case, the ALJ reviewed the opinion of consultative examiner John Blaze, Ph.D. Plaintiff argues that the ALJ's evaluation of Dr. Blaze's opinion is not supported by substantial evidence. Specifically, Plaintiff argues (1) the ALJ failed to mention or discuss Dr. Blaze's statement that Plaintiff's mental health symptoms were severe, and (2) the rationale the ALJ provided for discrediting Dr. Blaze's opinion was not based on substantial evidence. (Doc. 8 at 2).

Dr. Blaze examined Plaintiff on April 7, 2021, and he opined :

> The claimant reported experiencing several unstable mood symptoms. It was reported that manic and depressive symptoms such as insomnia, hypersomnia, pressured speech, psychomotor agitation, guilt, fatigue, irritability, changes in eating, hopelessness, anhedonia, expansive mood, paranoia, feeling like a motor is inside, can't sit still, and distinct phases that shift from low to high over weeks all occur. This has been happening as long as can be remembered and has continue[d] to occur. For these reasons, a diagnosis of Bipolar I Disorder is appropriate. The claimant experiences panic attacks that are unexpected and seemingly random. These tend to occur when arousal is high due to stress, pain, or other physical conditions. Behavior has changed as a result of these attacks in an attempt to manage the symptoms. However, fear of having another attack has remained consistently high, which contributes to further attacks. The claimant meets full criteria for Panic Disorder. Lastly, the claimant reported experiencing abuse and trauma over 6 months ago that

8

> has resulted in hyperarousal, intrusive thoughts of the incidents, avoidance behaviors, and re-experiencing symptoms in the form of extreme nightmares. These symptoms have significantly affected their life negatively and they always feel "on-edge." The claimant meets the full criteria for Post-Traumatic Stress Disorder.
>
> The current level of mental health symptoms would best be characterized as severe.

(Tr. 558). Dr. Blaze's report further stated:

> Ms. Powell is a single, Caucasian female, 35 years of age who appears to meet criteria for Bipolar I Disorder, Current or Most Recent Episode Depressed, Mild, Panic Disorder, and Posttraumatic Stress Disorder. The overall presentation appeared valid and consistent with the reported conditions. The mental health symptoms based on report and clinical observations appear to be severely impacting activities of daily living, vocational performance, and interpersonal interactions. Current prognosis for Ms. Powell is guarded. In regards to financial management, Ms. Powell is recommended to manage benefits and financial decisions.

(Tr. 560).

When determining the weight to give a medical opinion, an ALJ must consider (1) the opinion's supportability or the relevance of the objective evidence to the opinion; (2) the opinion's consistency with the objective evidence; (3) the medical professional's relationship with Plaintiff; (4) the professional's specialization; and (5) other factors, such

as the medical professional's familiarity with other record evidence. 20 C.F.R. § 416.920c(c). The first two factors are the most important. *Id.* § 416.920c(b)(2). And the ALJ "must state with particularity the weight given to the different medical opinions and the reasons" for that weight. *Winschel v. Comm's of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

Here, the ALJ determined that Dr. Blaze's opinion had low supportability and consistency for two reasons. First, the ALJ found Dr. Blaze's opinion was not consistent with or supported by the record. (Tr. 16). Second, the ALJ found Dr. Blaze's opinion was not internally consistent with his unremarkable mental-status examination results. (*Id.*). The ALJ did not, as Plaintiff claims, ignore Dr. Blaze's statement that Plaintiff's mental health symptoms were significant and severe. Indeed, the ALJ explicitly notes that Dr. Blaze "opined the claimant's symptoms severely impacted the claimant's activities of daily living, vocational performance, and interpersonal interactions." (Tr. 16). The ALJ went on to explain his findings as to the opinion's supportability and consistency, finding it was "not persuasive." (*Id.*).

Plaintiff relies heavily on Dr. Blaze's statement that Plaintiff's mental health "symptoms would best be characterized as severe," but

10

substantial evidence supports the ALJ's determination that this opinion is inconsistent with other evidence and Dr. Blaze's own findings. There is evidence in the record that "shows stability with minimal and conservative mental health treatment." (Tr. 16). For instance, the record does not reflect that Plaintiff took medication consistently after her disability onset date. (*See* Tr. 561) (Plaintiff denied taking psychotropic medications and stated that she had been prescribed medication 4-5 years ago, but stopped taking the medication because she did not like it), 660 (stopped taking Wellbutrin[3] after two months because "it didn't seem to help")).

Plaintiff was only seen once at Lakeview Center on July 8, 2021 during the period at issue. (Tr. 561-68). And at that appointment, the counselor referred Plaintiff for therapy to develop coping skills and noted that she might later be referred for medication management if her symptoms worsened or did not abate. (Tr. 565). On examination, the

---

[3] Wellbutrin is a brand name for Bupropion, an antidepressant medication that works in the brain. It is approved for treatment of depression. *Bupropion (Wellbutrin)*, National Alliance on Mental Health, (last updated Jan. 2016) https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Bupropion-(Wellbutrin).

11

counselor noted that Plaintiff was hyperverbal with labile affect, but also noted that Plaintiff was cooperative, calm, alert, and oriented. (Tr. 564). Her judgment, attention, and concentration were also found to be intact, and she was noted to have partial insight and no perceptual disturbances. (*Id.*). During other examinations, Plaintiff similarly was found to have unremarkable mental status findings, including being alert and cooperative with normal thought content, mood, affect, attention span, and concentration. (Tr. 627, 634, 651, 766, 774, 782, 803, 811, 818).

The ALJ did not err by considering Dr. Blaze's statement about the severity of Plaintiff's symptoms in context of the entire record and weighing it accordingly. *See, e.g.*, *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021) (finding that substantial evidence supported the ALJ's decision to discount a physician's opinion where the medical opinion "conflicted with other evidence, including several examinations"). Substantial evidence also supports the ALJ's determination that Dr. Blaze's opinion was inconsistent with his own findings. Dr. Blaze conducted a mental status examination of Plaintiff. On examination, Dr. Blaze found Plaintiff had appropriate attention and concentration, normal speech, adequate social skills, logical thought

12

processes, and adequate judgment and abstract reasoning.[4] (Tr. 559). Plaintiff also reported that she was able to bathe, dress, prepare food, complete household chores without assistance, manage money, pay bills, and complete grocery shopping independently. (Tr. 558). Substantial evidence supports the ALJ's conclusion that these findings are inconsistent with Dr. Blaze's opinion that Plaintiff's symptoms severely impacted her functioning.[5] *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (affirming the ALJ's decision to discount a physician's opinion because it was "inconsistent with his own treatment notes").

---

[4] The Court did not overlook Plaintiff's argument that mental health symptoms wax and wane, and that unremarkable mental examination findings on a specific day are not representative of Plaintiff's overall mental health status. But as outlined above, the record reflects several mental examinations with unremarkable findings and few examinations containing any remarkable findings. It is Plaintiff's burden to proffer medical evidence establishing that she suffers from a disability. Had the record reflected a more significant history of treatment or more evidence showing that her mental illnesses were debilitating, the outcome may have been different. But Plaintiff has not provided such evidence.

[5] Of note, Dr. Blaze was a one-time consultative examiner whose report mostly relied on Plaintiff's own report of her symptoms. Had Dr. Blaze seen Plaintiff multiple times and had a more longitudinal view of her symptoms, perhaps his opinion might have carried more weight with the ALJ. *See* 20 C.F.R. § 416.920c(c)(3) (requiring the ALJ to consider the medical provider's relationship with the plaintiff in determining what weight to give the provider's opinion).

Moreover, substantial evidence in the record supports the ALJ's ultimate finding that Plaintiff was not disabled. The record indicates that Plaintiff can perform a range of everyday tasks in spite of her physical and mental impairments. (Tr. 300, 558). As described above, Plaintiff largely performed within the range of normal outcomes on mental-status examinations. Medical-record evidence reflects that Plaintiff displayed fair social skills, demonstrated adequate judgment and insight, and appeared to have coherent and logical thought processes. (Tr. 300, 358, 364, 564, 559, 627, 634, 651, 766, 774, 782, 803, 811, 818). This is not a case in which the ALJ broadly rejected evidence, preventing this Court from concluding that the ALJ failed to consider Plaintiff's medical condition as a whole. *Mitchell*, 771 F.3d at 782. This evidence combined with the paucity of evidence supporting Plaintiff's claims of disabling mental health symptoms provide substantial evidence for the ALJ's decision that Plaintiff was not disabled.

It is not this Court's role to "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the" ALJ. *Mitchell*, 771 F.3d at 782. Here, the ALJ applied the appropriate legal framework and adequately explained his supportability and consistency findings. The

ALJ was not required to accept Dr. Blaze's opinion without question but rather retained the ability to weigh his opinion against other medical evidence. And even if some evidence in the record supports Plaintiff's claim of disability, substantial evidence supports the ALJ's contrary finding. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Thus, the ALJ did not commit reversible error by assigning low persuasive value to Dr. Blaze's opinion in reaching the determination that Plaintiff was not disabled.

## VI.  Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, this matter be **DISMISSED**, and final judgment be entered consistent with this opinion under sentence four of 42 U.S.C. § 405(g).

At Pensacola, Florida, this 26th day of June 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all

other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.